**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

CALVIN E.,

                             Plaintiff,

        v.

ANDREW SAUL,[1]

                      Defendant.

No. 5:18-CV-060
(CFH)

_____

**APPEARANCES:**

Olinsky Law Group
300 South State Street, Suite 420
Syracuse, New York 13202
Attorney for plaintiff

Social Security Administration
Office of Regional General Counsel
Region II
26 Federal Plaza – Room 3904
New York, New York 10278
Attorney for the Commissioner

**OF COUNSEL:**

HOWARD D. OLINSKY, ESQ.

LAUREN E. MYERS, ESQ.
Special Assistant U.S. Attorney

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**MEMORANDUM-DECISION AND ORDER**

     Plaintiff Calvin E.[2] brings this action pursuant to 42 U.S.C. § 405(g) seeking

_____

[1] Andrew Saul was appointed Commissioner of Social Security, and has been substituted as the defendant in this action.

[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff by first name and last initial.

review of a decision by the Commissioner of Social Security ("the Commissioner")

denying his application for supplemental security income ("SSI") benefits.  Dkt. No. 1

("Compl.").[3]  Plaintiff moves for remand for further proceedings, and the Commissioner

cross-moves for a judgment on the pleadings.  Dkt. Nos. 16, 21.  For the following

reasons, the determination of the Commissioner is affirmed.

## I. Background

Plaintiff, born in 1970, completed tenth grade and was enrolled in both regular

and special education classes.  T. 103.[4]  Plaintiff obtained his GED in 2011.  Id. at 104.

Plaintiff does not have a driver's license.  Id.  Plaintiff's last worked at the Center for

Employment Opportunities performing small tasks.  Id. at 104-05.  He previously was

employed at Western Beef Retail performing clean-up work and at Triumph

Construction as a construction worker.  Id. at 107, 109.

On September 17, 2008, plaintiff protectively filed a Title XVI application for SSI

benefits.  T. 250-52.  Plaintiff alleged a disability onset date of January 1, 2008.  Id. at

250.  The application was initially denied on January 29, 2009.  Id. at 154-57.  Plaintiff

requested a hearing, and a hearing was held on January 18, 2011 before Administrative

Law Judge ("ALJ") John P. Ramos.  Id. at 96-144.  ALJ Ramos issued an unfavorable

---

[3] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  Dkt. No. 7.

[4] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  Dkt. Nos. 12, 15.  Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

decision on February 25, 2011.  Id. at 15-24.  On March 1, 2012, the Appeals Council denied plaintiff's request for review.  Id. at 4.  Plaintiff commenced an action in the United States District Court for the Northern District of New York seeking review of the Commissioner's decision.  Id. at 615.  On August 3, 2013, this Court remanded the case to the Commissioner for further proceedings.  Id.  The Appeals Council vacated the February 25, 2011 decision and remanded the case to the ALJ for a redetermination of disability.  Id. at 634-36.  ALJ Ramos held a second hearing on November 26, 2014, and on January 12, 2015, issued a second unfavorable decision.  Id. at 521-42.  The Appeals Council granted plaintiff's request for review, and remanded the case to the hearing level for a redetermination of disability.  Id. at 663-66.

ALJ Jennifer Smith conducted two more hearings on April 26, 2016 and July 11, 2017, before issuing an unfavorable decision on November 7, 2017.  T. 545-91, 1738-90, 1794-1824.  The Appeals Council did not assume jurisdiction within sixty days of the November 7, 2017 decision, making the ALJ's findings the final determination of the Commissioner.  Plaintiff commenced this action on January 1, 2018.  See Compl.

## II. Discussion

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct

legal standards were not applied, or it was not supported by substantial evidence.  See

Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464,

467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that

in the record one can find "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir.

2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations

omitted)).  The substantial evidence standard is "a very deferential standard of review . .

. . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable

factfinder *would have to conclude otherwise*."  Brault v. Soc. Sec. Admin., Comm'r, 683

F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted).  Where there is

reasonable doubt as to whether the Commissioner applied the proper legal standards,

the decision should not be affirmed even though the ultimate conclusion is arguably

supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148

(N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal

standards were applied and the ALJ's finding is supported by substantial evidence,

such finding must be sustained "even where substantial evidence may support the

plaintiff's position and despite that the court's independent analysis of the evidence may

differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y.

1992) (citation omitted).


**B. Determination of Disability**

 "Every individual who is under a disability shall be entitled to a disability . . . benefit

4

. . . ." 42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for a continuous period of

not less than 12 months."  Id. § 423(d)(1)(A).  A medically-determinable impairment is

an affliction that is so severe that it renders an individual unable to continue with his or

her previous work or any other employment that may be available to him or her based

on his or her age, education, and work experience.  Id. § 423(d)(2)(A).  Such an

impairment must be supported by "medically acceptable clinical and laboratory

diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairments is

"based [upon] objective medical facts, diagnoses or medical opinions inferable from the

facts, subjective complaints of pain or disability, and educational background, age, and

work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3

(S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir.

1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. §

404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers
> whether the claimant has a "severe impairment" which
> significantly limits his [or her] physical or mental ability to do
> basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry
> is whether, based solely on medical evidence, the claimant
> has an impairment which is listed in Appendix 1 of the
> regulations.  If the claimant has such an impairment, the

> [Commissioner] will consider him [or her] disabled without
> considering vocational factors such as age, education, and
> work experience; the [Commissioner] presumes that a
> claimant who is afflicted with a "listed" impairment is unable
> to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's severe
> impairment, he [or she] has the residual functional capacity
> to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past
> work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  The plaintiff bears the initial burden of proof to

establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1179-

80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth

step, the burden shifts to the Commissioner to prove that the plaintiff is still able to

engage in gainful employment somewhere.  Id. at 1180 (citing Berry, 675 F.2d at 467).


## C. ALJ Decision

Applying the five-step disability sequential evaluation, the ALJ determined that

plaintiff had not engaged in substantial gainful activity since September 17, 2008, the

date of the application.  T. 1797.  The ALJ found at step two that plaintiff had the severe

impairments of obesity, myofascitis of the spine, left knee medial meniscus tear with

patellofemoral dysfunction, left ankle sprain, status post gunshot wounds to the spine

and lower extremities, herniated disc at the L4-L5 level with lumbar radiculopathy, right

shoulder myofascitis, bilateral shoulder impingement, bipolar disorder, mood disorder,

depressive disorder, anxiety disorder, panic attacks, post traumatic stress disorder

("PTSD") psychosis, and substance abuse disorder. Id. at 1798. At step three, the ALJ

determined that plaintiff did not have an impairment or combination of impairments that

met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part

404, Subpart P, Appendix 1. Id. at 1802. Before reaching step four, the ALJ concluded

that plaintiff retained the residual functional capacity ("RFC") to

> frequently lift and carry up to 20 pounds; can sit for 8 hours in
> an 8-hour workday, with sitting limited to 2 hours at a time; can
> stand for 2 hours total in an 8-hour workday, with standing
> limited to one hour at a time; can walk for 2 hours total in an
> 8-hour workday, with walking limited to one hour at a time;
> should be allowed to use a cane to ambulate, but retains the
> ability to carry small objects, such as files, in his free hand; can
> occasionally reach overhead; can frequently reach in all other
> directions; can continuously handle, finger, and feel; can
> occasionally push and pull up to the weight limits for light work;
> can occasionally operate foot controls; should not climb
> ladders, ropes, or scaffolds; should not crouch; can
> occasionally climb ramps, climb stairs, balance, kneel, stoop,
> and crawl; should not work around vibrations; can occasionally
> be exposed to humidity, wetness, extreme heat, or extreme
> cold; should work at simple, routine and repetitive tasks; and
> should work in a "low-stress job," defined as occasional
> decision-making, occasional judgment requirements, and
> occasional changes in the work setting.

Id. at 1804. At step four, the ALJ found that plaintiff has no past relevant work. Id. at

1820. At step five, the ALJ determined that, after consulting with a vocational expert,

and considering plaintiff's age, education, work experience, and RFC, there were jobs

that existed in significant numbers in the national economy that plaintiff could perform.

Id. Thus, the ALJ determined that plaintiff "ha[d] not been under a disability, as defined

in the Social Security Act, since September 17, 2008, the date the application was

filed." Id. at 1823.

## D. Arguments

Plaintiff argues that "[t]he ALJ's RFC determination is not supported by substantial evidence because it is based on the outdated opinion of a consultative examiner, highlighting the ALJ's failure to develop the record regarding [p]laintiff's mental impairments." Dkt. No. 16 at 3. Conversely, the Commissioner argues that the ALJ's RFC determination is supported by substantial evidence. Dkt. No. 21 at 8-13.

## E. Relevant Medical Evidence

Plaintiff met with Dr. Dr. Dmitri Bougakov for a consultative psychiatric evaluation on November 11, 2008. T. 409. Plaintiff reported difficulty sleeping, a poor appetite, and weight loss. Id. at 409. He indicated that he felt sad occasionally, irritated easily, and suffered from mood swings. Id. at 410. Plaintiff described his energy as "up and down," and stated that he had concentration difficulties. Id. Plaintiff also complained of poor memory and forgetfulness. Id.

Dr. Bougakov noted that plaintiff was cooperative and "related in an adequate fashion." T. 410. He noted that plaintiff appeared to be his stated age and was appropriately dressed. Id. Plaintiff was well-groomed. Id. His gait, posture, and motor behavior were normal, and his eye contact was appropriate. Id. Dr. Bougakov indicated that plaintiff's thought process was coherent and goal directed. Id. at 411. His affect and mood were apathetic; his sensorium was clear; and he was oriented to

person, time, and place.  Id.  Plaintiff's attention and concentration were intact, and he was able to do counting, simple calculations, and serial 3s.  Id.  Dr. Bougakov noted that plaintiff's recent and remote memory skills were likely impaired due to the effects of his substance abuse.  Id.  He was able to recall three out of three objects immediately, and zero out of three after five minutes.  Id.  Plaintiff could count five digits forward, and three digits backwards.  Id.  Dr. Bougakov found that plaintiff's intellectual functioning was in the average range, and his general fund of information was appropriate to his experience.  Id.  Plaintiff's insight and judgment were fair.  Id.  As to his mode of living, plaintiff reported that he had no daily restrictions in completing household chores, except that he had physical pain related to his injuries.  T. 411.  He was able to manage his money and take public transportation.  Id.  Although he did not spend time with family and friends, he reported watching television, reading, painting, and socializing with other residents in his program.  Id.

Dr. Bougakov opined that plaintiff could follow and understand simple directions and instructions, and perform simple tasks independently.  T. 411.  Plaintiff could maintain attention and concentration, and should be able to maintain a regular schedule.  Id. at 411-12.  Dr. Bougakov indicated that plaintiff was "somewhat limited in his ability to learn new tasks and perform complex tasks."  Id. at 412.  He noted that plaintiff should be able to make appropriate decisions, relate adequately with others, and otherwise deal with stress.  Id.  He opined that plaintiff's difficulties were "caused by psychiatric symptomology and the results of the examination appear[ed] to be consistent with substance abuse problems."  Id.  Dr. Bougakov further opined that

9

plaintiff's difficulties did not "interfere significantly with [plaintiff's] ability to function on a daily basis." Id.

Dr. Bougakov stated that plaintiff's prognosis was "guarded to fair given the fact that [plaintiff] [did] present with some cognitive limitations during [the] evaluation." T. 412. He noted that plaintiff did not present with significant psychiatric symptomatology. Id. Dr. Bougakov opined that although plaintiff had a significant history of substance abuse and did not have a regular employment history, he hoped that "with appropriate treatment [plaintiff] should be able to return to normal overall functioning." Id.

In a form entitled "Mental Residual Functional Capacity Assessment," dated January 20, 2009, A. Hochberg, Ph.D., the State agency medical consultant, indicated that plaintiff was not significantly limited in his ability to remember locations and work-like procedures or in his ability to understand and remember very short and simple directions. Id. at 440. He indicated that plaintiff was moderately limited in his ability to understand and remember detailed instructions. Id. There was no evidence of limitation in plaintiff's ability to carry out very short and simple instructions, work in coordination or proximity to others without being distracted by them or make simple work-related decisions. Id. at 440-41. Plaintiff was not significantly limited in his ability to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and sustain an ordinary routine without special supervision. Id. at 440. Plaintiff was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically-based

symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Id. at 441.

Dr. Hochberg opined that plaintiff was not significantly limited in his ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  T. 441.  There was no evidence of limitation in plaintiff's ability to ask simple questions or request assistance or maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.  Id.  Plaintiff was not significantly limited in his ability to respond appropriately to changes in the work setting or his ability to set realistic goals or make plans independently of others.  Id.   There was no evidence of limitation in plaintiff's ability to be aware of normal hazards and take appropriate precautions or travel in unfamiliar places or use public transportation.  Id.

Dr. Hochberg noted that plaintiff's consultative examination findings were benign, and that plaintiff was able to manage his money and take public transportation.  T. 442.  He stated that the consultative examining doctor opined that plaintiff could follow and understand simple directions and could perform simple tasks independently.  Id.  Thus, Dr. Hochberg determined that "[b]ased on the totality of the evidence in [the] file, . . . [plaintiff] retain[ed] the residual functional capacity to perform entry level work activities on a sustained basis."  Id.

**F. Analysis**

11

RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms. See Martone, 70 F. Supp. 2d at 150; 20 C.F.R. §§ 404.1545, 416.945. "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient." Martone, 70 F. Supp. 2d at 150. The ALJ then uses the RFC to determine whether the claimant can perform his or her past relevant work. See New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960. If it is determined that a claimant cannot perform past relevant work, "the burden shifts to the Commissioner to determine whether there is other work which the claimant could perform." Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. See also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, No. 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted). "An ALJ should consider 'all medical opinions received regarding the claimant.'" Reider v.

12

Colvin, No. 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting

Spielberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); see also SSR 96-8p,

1996 WL 374184, at *7 (July 2, 1996).  The factors for considering opinions from

non-treating medical sources are the same as those for assessing treating sources,

with the consideration of whether the source examined the claimant or not replacing the

consideration of the treatment relationship between the source and the claimant.  20

C.F.R. §§ 404.1527(c)(1)-(6).


### 1. Appeals Council's Remand Order

In the August 11, 2015 order remanding the case to the ALJ, the Appeals

Council directed the ALJ to,

- [i]f necessary, obtain updated and additional evidence concerning [plaintiff's] impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 416.912-913).  The additional evidence may include, if warranted and available, consultative physical and psychological examinations and medical source statements about what [plaintiff] can still do despite the impairments.

- [f]urther evaluate the claimant's mental impairments in accordance with the special technique described in 20 CFR 416.920a, documenting the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 416.920(c).

- [i]f warranted, obtain supplemental information from a medical expert to clarify the nature and severity of [plaintiff's] impairments (Social Security Ruling 96-6p).

13

Id. at 664-65.  As plaintiff points out, the ALJ "declined to obtain a psychiatric medical expert, consultative psychological examination or IQ testing in this case." Id. at 1802; Dkt. No. 16 at 15.  The ALJ stated that unless the Appeals Council or the district court so ordered her to obtain a medical expert opinion, the need for additional consultative examinations "is at the [ALJ's] discretion."  T. 1802.  As such, the ALJ determined that "record [was] complete and [did] not warrant the use of additional medical expert opinion, additional consultative examination, or formal IQ testing . . . given [plaintiff's] limited evaluation and treatment for complaints of cognitive issues and his engagement in a range of activities that do not support significant intellectual deficits."  Id.  Instead, in evaluating plaintiff's mental limitations, the ALJ relied primarily on the November 2008 medical opinion of Dr. Bougakov, which she granted "partial weight," and the assessment of Dr. Hochberg, which she afforded "little weight."  Id. at 1816.

Plaintiff seems to suggest that the ALJ failed to abide by the Social Security regulations, which direct that the ALJ take any action ordered by the Appeals Council, in neglecting to obtain an updated consultative examination.  See Dkt. No. 16 at 16 ("Accordingly, reviewing courts have found that failure to comply with the Appeals Council's remand order may be grounds for remand . . . . Clearly, the obsolete nature of the mental opinions means that a consultative examination was warranted.").  However, as the Commissioner argues, "the Appeals Council directed the ALJ to obtain updated and additional evidence concerning [p]laintiff's impairments *if necessary* to complete the record in accordance with 20 C.F.R. §§ 416.912, 416.913."  Dkt. No. 21 at 11; see T. 664 (emphasis added).  The Commissioner quoted the Appeals Council's phrasing,

14

that such additional evidence "*may* include, *if warranted* and available, consultative physical and psychological examinations and medical source statements."  Dkt. No. 21 at 11 (quoting T. 664) (internal quotation marks omitted) (emphasis in original). Thus, it was within the ALJ's discretion to "decline[ ] to obtain a psychiatric medical expert, consultative psychological examination or IQ testing in this case" as the Appeals Council did not expressly mandate that she obtain such testing   T. 1802.  Therefore, insofar as plaintiff appears to argue that the ALJ erred by failing to adhere to the regulations, this argument is misplaced.


### 2. Whether the ALJ Failed to Properly Develop the Record

As to whether the ALJ erred in failing to develop the record and relying on "outdated" examinations, the Court finds this a closer question. "Although the claimant has the general burden of proving that he or she has a disability within the meaning of the Act, because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Munerlyn v. Colvin, 203 F. Supp. 3d 253, 263-64 (W.D.N.Y. 2016) (citation and internal quotation marks omitted).  "The ALJ has discretion on a case-by-case basis to determine whether a consultative examination is needed, and is only required to order such an examination where the examination is necessary to resolve a conflict or ambiguity in the record."  Phelps v. Colvin, 20 F. Supp. 3d 392, 401 (W.D.N.Y. 2014) (citing 20 C.F.R. § 404.1519a(b)(4); Simon v. Colvin, No. 6:12-CV-6381 MAT, 2013 WL 4094612, at *6-7 (W.D.N.Y. Aug. 13, 2013) (finding no psychiatric consultative

evaluation needed where substantial evidence in the record to support ALJ's conclusion).  "'An ALJ is not obligated to order a consultative examination if the facts do not warrant or suggest the need for such an examination.'"  Phelps, 20 F. Supp. 3d at 402 (quoting Brown v. Astrue, No. 11-CV-6329T, 2012 WL 2953213, at *7 (W.D.N.Y. July 19, 2012)).  Conversely, "it is a reversible error for the ALJ to fail to obtain a consultative examination if such an evaluation is necessary for the ALJ to make an informed decision."  Id. (citing Falcon v. Apfel, 88 F. Supp. 2d 87, 90-91 (W.D.N.Y. 2000)).

Plaintiff argues that the ALJ erred in relying on the "outdated opinion" of  Dr. Bougakov, and failed to further develop the record as to plaintiff's mental impairments. See Dkt. No. 16 at 14.  Although Dr. Bougakov's consultative examination occurred nearly ten years before the ALJ's decision, the Court notes that "[t]he mere passage of time does not necessarily render an opinion outdated or stale."  Marozzi v. Berryhill, No. 6:17-CV-06864-MAT, 2019 WL 497629, at *7 (W.D.N.Y. Feb. 8, 2019) (citing Carthron-Kelly v. Comm'r of Soc. Sec., No. 5:15-CV-0242 (GTS/WBC), 2017 WL 9538379, at *6 (N.D.N.Y. Sept. 25, 2017) ("[T]he mere addition of medical records after a State agency medical examiner's review does not render the examiner's opinion invalid. To be sure, the 2013 MRI described [p]laintiff's cervical protrusion at C3-4 as 'large,' as compared to 'small' in 2009. However, Plaintiff fails to specify how the MRI or additional treatment notations were inconsistent with Dr. Junejo's findings or would alter the ALJ's determination. The evidence received after Dr. Junejo's review did not contain any evidence of additional limitations.")).  Rather, a medical opinion is outdated if

16

subsequent treatment notes demonstrate that the plaintiff's condition has deteriorated. See id. (citing Jones v. Colvin, No. 13-CV-06443, 2014 WL 256593, at *7 (W.D.N.Y. June 6, 2014) (finding that the ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not account for her deteriorating condition"). "A more remote medical opinion may in fact constitute substantial evidence if it is consistent with the record as a whole." Id. (citing Andrews v. Berryhill, No. 17-CV-6368(MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018)

In assessing whether plaintiff's condition deteriorated after Dr. Bougakov's medical opinion, the record is clear that plaintiff's post-2008 treatment notes indicate that he experienced mood swings, visual and audio hallucinations, nightmares, "avoidance," "hypervigilence," and thoughts of death in 2009 and 2010. T. 479-83, 514. In 2011, plaintiff reported visual and audio hallucinations, mood swings, increased worrying, self-sabotage, and anger issues. Id. at 1089-90. However, as the ALJ noted, these symptoms generally occurred during gaps in plaintiff's treatment history, which included inconsistent use of his medication, wherein plaintiff admitted that his symptoms had worsened. See T. 479 (stating in 2010: "The Client reports that he has been off meds since 2009 and in that time his symptoms have gotten worse."), 1089 (stating in 2011 the same). In fact, mental health progress notes from the Postgraduate Center for Mental Health demonstrate that when plaintiff took his prescribed medication his thought process was appropriate and there was no evidence of delusions, hallucinations, or dissociative symptoms. See id. at 1321. "Thus, the record substantially supports the ALJ's findings concerning her gaps in treatment and her

non-compliance with prescribed treatment, which were relevant considerations in the evaluation of [plaintiff's] credibility concerning the limitations caused by [his] impairments." Cardoza v. Astrue, No. 3:10-CV-1951 (MRK/WIG), 2012 WL 3727160, at *8 (D. Conn. Apr. 13, 2012); Calabrese v. Astrue, 358 F. App'x 274, 278 (2d Cir. 2009) (summary order) (noting the plaintiff's noncompliance with medication in discrediting her subjective complaints).

As the Commissioner notes, plaintiff's treatment history depicts, at times during the period post-dating Dr. Bougakov's 2008 examination, unremarkable findings, including examinations with clear and coherent speech, goal-directed thought processes, calm behavior, and appropriate affect. T. 1176, 1179, 1181, 1188, 1201, 1203, 1204, 1416, 1434. Moreover, the record is clear that the ALJ took the "moderate" difficulties plaintiff did have in certain areas in account in determining the appropriate RFC. See T. 1817 ("[T]he record does not support more than moderate difficulties in interacting with others when considering skilled, semi-skilled and unskilled work, with no significant limitation in the ability to deal with supervisors, co-workers, and the general public in unskilled work. [Plaintiff's] difficulties in interacting with others appear to occur in limited circumstances."), 1818 ("[T]he record does not support more than moderate difficulties adapting or managing oneself."). The ALJ acknowledged that plaintiff testified that he helped raise his girlfriend's children, grocery shopped, worked outside the home during the relevant period, used public transportation, and attended medical appointments. T. 1817; see id. at 411, 415, 684-87, 1099, 1122, 1760-61. Moreover, the ALJ noted that plaintiff's allegations of poor attention, memory, and that stress

greatly affects him "appear overstated" due to plaintiff's ability to perform the above-mentioned activities of daily living.  T. 1819.  She further stated that plaintiff's performance of "light-level exertion . . . would not be expected to result in more than slight or minimal cognitive limitations."  Id.  As such, although "it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves," Battease v. Comm'r of Soc. Sec., No. 3:15-CV-867 (ATB), 2016 WL 3824146, at *7 (N.D.N.Y. July 13, 2016) (internal quotations omitted), the Court concludes that the ALJ did not err in assessing plaintiff's activities of daily living in conjunction with the RFC determination.

"[I]t is well established that where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."  Puente v. Comm'r of Soc. Sec., 130 F. Supp. 3d 881, 893 (S.D.N.Y. 2015); see Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996) (holding that where the ALJ had "already. . . obtained and considered reports" from treating physicians, the ALJ "had before him a complete medical history, and the evidence received from the treating physicians was adequate for him to make a determination as to disability").  As evidenced above, there is no indication that the ALJ did not possess a complete medical history as to plaintiff's mental limitations when rendering her RFC determination.  See id.  The Court finds that there is substantial evidence in the record to establish that although plaintiff had mental limitations, he still functioned at a level to

be able to complete "work at simple, routine and repetitive tasks; and work in a 'low-stress job,' defined as occasional decision-making, occasional judgment requirements, and occasional changed in the work setting," as defined in the RFC.  T. 1804.  As such, the ALJ was within her discretion to decline to obtain a consultative examiner, as no conflict or ambiguity existed in the record.  See Phelps, 20 F. Supp. 3d at 401.  Plaintiff "has not established beyond conclusory assertions that the record was insufficient for the ALJ to make [her] determination."  Brandt v. Colvin, No. 3:13-CV-02165, 2014 WL 4793956, at *7 (M.D. Pa. Sept. 24, 2014) (citing Phelps, 20 F. Supp. 3d at 402).  The Court concludes that ALJ did not err in her decision not to request an additional consultative examiner as to plaintiff's mental impairments, and instead, rely on  "the medical opinion of Dr. Bougakov [which she found] more consistent with the record in its entirety, including [plaintiff's] overall positive response to ongoing mental health treatment and his engagement in a range of activities of daily living that require good mental functioning."  T. 1820.   Thus, the Court concludes that the ALJ fully developed the record.

### III. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that Calvin E.'s motion (Dkt. No. 16) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 21) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-

Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: July 3, 2019
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge